# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| LUCIOUS ALLEN DANIELS JR., Individually and as Administrator of the Estate of Lucious Allen Daniels Sr., Deceased, MARY A. DANIELS, individually as surviving spouse, LASHEBA MORTIMER, individually, and MARIKA DANIELS, individually, as surviving children of Lucious Allen Daniels Sr., Deceased, <br><br> Plaintiffs, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA, THE UNITED STATES ARMY CORPS OF ENGINEERS, and GEORGIA DEPARTMENT OF TRANSPORTATION, <br><br> Defendants. | CV 213-092 |

## ORDER

In this wrongful death suit, Plaintiffs claim their husband and father, Lucious Allen Daniels Sr., died when the county-owned truck he was driving collided with a gate maintained by the U.S. Army Corps of Engineers. Glynn County later disposed of the truck Mr. Daniels was driving—but not before giving Plaintiffs an opportunity to have their accident reconstruction

1

expert inspect it. Defendants, who were not notified of the truck's impending destruction, claim that Plaintiffs can be held responsible for the County's spoliation of critical evidence and that their complicity warrants dismissal or, alternatively, lesser sanctions. Dkt. no. 45. Because the Court finds that Plaintiffs' culpability in the destruction of the truck merits some sanctions while the prejudice against Defendants is not so high as to warrant dismissal, this Court **GRANTS** Defendants' motion in part. Plaintiffs' expert will not be able to offer expert testimony about his inspection of the truck at trial, but his photographs will be admissible.

## I. Background

On October 5, 2012, decedent Lucious Allen Daniels Sr. was driving a 2000 Dodge Dakota pickup truck owned by Glynn County, his employer, to a public worksite. Dkt. no. 15, ¶ 25. The worksite could be secured by a gate that closed across Homer Wilson Parkway, on which decedent was driving. Id. However, on October 5, the gate was propped open with either a board or a stick. Id. at 27. As Mr. Daniels approached the gate on Homer Wilson Parkway, Plaintiffs allege "it suddenly and without warning began closing," and the arm of the gate struck the windshield of the truck. Id. at ¶ 28. The metal arm pierced the windshield, entered the cab, and stabbed Mr. Daniels, killing him instantly. Id.

Plaintiffs filed this lawsuit against the United States Army Corps of Engineers, the Georgia Department of Transportation ("GDOT"), and the United States on July 15, 2013. Dkt. no. 1. The claims against the Army Corps of Engineers and GDOT were later dismissed by stipulation, Dkt. nos. 16, 23, and only the United States remains as a Defendant. In its Answer to Plaintiffs' Amended Complaint, Defendant United States lists comparative negligence as a defense to recovery. Dkt. no. 22, p. 2.

After initiating the lawsuit, Plaintiffs retained transportation accident reconstructionist James Sloan as an expert witness. Dkt. no. 45-1 ("Sloan Dep."), 26:3-18. According to Sloan, it is important to make a physical inspection of a vehicle involved in an accident because "[i]t's helpful to be able to identify the extent—location [sic], extent, the magnitude of damage, [and] condition of the vehicle if that's an issue . . ." Id. at 13:21-14:9.

However, Sloan could not simply inspect the vehicle by way of Plaintiffs because they did not possess it. After the accident, the truck was in the Brunswick Police Department's custody. Sloan made his first request to see the truck to Sergeant Richard Meeks of the Brunswick Police Department on October 15 or 16, 2012. Id. at 26:14-27:8. Nevertheless, Sloan says "for whatever reason, the vehicle was retained by the

AO 72A
(Rev. 8/82)

county for some period of time before [he] could get to it." Id. at 28:15-18.

During that period, Glynn County sent two letters to Plaintiffs' counsel regarding the status of the truck. The first letter was sent on February 22, 2013. It informed Plaintiffs' counsel that the truck would soon be released from the Brunswick Police Department's custody and that the Glynn County Board of Commissioners had approved the truck's disposal. Dkt. no. 45-6. The letter went on to state:

> I am writing to inform you of this action and to provide you with the opportunity to conduct an inspection of the vehicle prior to its disposal. Glynn County will retain the vehicle until March 22, 2013 to provide you an opportunity to conduct an inspection.
>
> If you wish for the vehicle to be preserved subsequent to that date, you may arrange for storage of the vehicle at your cost until the vehicle is no longer needed. Glynn County shall retain ownership of the vehicle. Please contact me so that an appointment may be scheduled for you to conduct your inspection or if you have any questions.

Id.

Plaintiffs' counsel did not respond to the first letter, and claim they have no record of receiving it. Glynn County sent a second letter on March 14, 2013, stating: "This correspondence is to inform you that Glynn County intends to dispose of the vehicle on March 29, 2013. If I do not hear from you before that date then I will assume that you do not wish to inspect the vehicle." Dkt. no. 45-7.

After receiving the second letter, Sloan and Plaintiffs' counsel made arrangements for Sloan to inspect the truck on March 18, 2013. Sloan Dep. 31:10-15. At this inspection, Sloan took 166 photographs of the truck and also took several measurements. See Sloan Dep. at pp. 37-42. The photographs and measurements Sloan took confirm, he claims, that the truck was not modified (Id. at 46:1-11), that the case is not one about "vehicle defects" (Id. at 46:12-14), and that there were no obvious defects with the tires (Id. at 48:2-8). Sloan also took measurements of and inspected the gate arm that allegedly collided with the truck. Id. at 46:23-25. Sloan says the main advantage he had from taking the photographs and measurements of the truck will be in "producing demonstratives for trial to help the jury understand" how the accident occurred. Id. at 45:1-13.

When asked during his deposition about the second letter Plaintiffs' counsel received from Glynn County, Sloan stated that he never received that letter, but that someone from Plaintiffs' counsel's office called him "about whether or not we were satisfied with what we had done [with the truck], was there any need for us to see it again or for them to hold onto it," and he indicated that there was not. Id. at 30:9-24. The vehicle was later disposed of.

For its defense, Defendant retained Michael A. Knox as an accident reconstruction expert. Dkt. no. 45-8, ¶ 5. While Knox

was able to investigate the accident site and the gate, he was not able to personally inspect the vehicle. Id. at ¶ 7. Knox claims that "[t]he inability to personally inspect the vehicle has hindered [his] ability to perform a complete accident reconstruction," and that having access only to Sloan's photographs puts him at a "significant disadvantage" for several reasons, including his inability to: determine if the truck had any mechanical defects; take measurements to help in preparing visual aids; make a close-up, visual inspection of the windshield to determine the point of contact between the gate and the truck; and to personally inspect the paint transfer on the vehicle to further determine the point of contact. Id. at ¶¶ 9-13. Knox claims that using Sloan's photographs and measurements will not cure his inability to take his own photographs and measurements, as he would have approached the accident from a different perspective and possibly would have inspected parts of the vehicle which Sloan did not. Id. at ¶¶ 15-17.

Defendant filed the instant Motion on April 18, 2014. Dkt. no. 45. Plaintiffs responded on May 5, 2014 (Dkt. no. 48) and Defendants replied on May 16, 2014 (Dkt. no. 51). The Court heard oral arguments on the matter on December 4, 2014 (transcript available at Dkt. no. 56), and Plaintiff and Defendant each subsequently filed supplemental briefs in support

of their arguments (Pl.'s Supp. Response, Dkt. no. 57; Def.'s Supp. Brief, Dkt. no. 58).

## II. Spoliation Sanctions

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." Bridgestone/Firestone N. Am. Tire, LLC v. Campbell, 574 S.E.2d 923, 926 (Ga. Ct. App. 2003). Federal law governs the imposition of spoliation sanctions. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). Nevertheless, because federal law in the Eleventh Circuit does not set forth specific guidelines for adjudicating spoliation claims, this Court may also consider those spoliation principles found in Georgia law which are consistent with federal spoliation principles. Id.

### a. Plaintiffs' Responsibility for a Third Party's Destruction of the Evidence

In determining whether sanctions are appropriate, the Court must first determine whether Plaintiffs were under a duty to preserve the truck before its destruction. Plaintiffs have cited Georgia state law for the principles governing this determination, and Defendants have pointed to federal spoliation law discussing when third parties may have such a duty. As discussed above, Flury allows the former to inform the latter.

In Georgia, "[a] spoliation claim cannot be pursued unless the spoliating party was under a duty to preserve evidence."

Whitfield v. Tequila Mexican Rest. No. 1, 748 S.E.2d 281, 287 (Ga. Ct. App. 2013).[1] This duty may burden a party to a case if a third party destroys evidence when acting as the litigant's agent. Bouve & Mohr, LLC v. Banks, 618 S.E.2d 650, 654 (Ga. Ct. App. 2005). An agency relationship arises "wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." Ga. Code Ann. § 10-6-1. This principle, though, cannot be used against a party to a case where nothing in the record suggests that the third party acted "at the behest" of the litigant. Boswell v. Overhead Door Corp., 664 S.E.2d 262, 263 (Ga. Ct. App. 2008).

However, federal courts have interpreted Georgia's agency requirement as one that does not demand strict adherence to the Restatement view of agency. In National Grange Mutual Insurance

---

[1] Both parties cite Delta/Air Tran Baggage Fee Antitrust Litig., 770 F. Supp. 2d 1299 (N.D. Ga. 2011) to suggest that a greater preliminary burden applies in this case. Instead of limiting Defendant's initial burden simply to showing a duty to preserve, Delta/Air Tran held that a party seeking spoliation sanctions must first show that (1) the missing evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial to its case. Id. at 1305. The Middle District of Georgia has followed the Northern in adopting this standard. See, e.g., Little v. McClure, No. 5:12-CV-147, 2014 WL 3778963, at *1 (M.D. Ga. July 31, 2014). However, Flury allows federal courts to consider the spoliation principles of the state where the incident occurred. See Flury, 427 F.3d at 944 (citing Silversti v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (recognizing "the articulation of spoliation principles from some of the New York cases cited" to the court in a case where the accident in question occurred in New York)). Starting with Delta/Air Tran and looking back at each link in the chain of cases cited for this three-pronged burden, we find that it actually originates from Florida state law and was adopted into federal jurisprudence by the Middle District of Florida. See Optowave Co. v. Nikitin, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *8 (M.D. Fla. Nov. 7, 2006) (citing Golden Yachts, Inc. v. Hall, 920 So.2d 777, 781 (Fla. Dist. Ct. App. 2006)).

Co. v. Hearth & Home, Inc., the Northern District of Georgia determined a plaintiff's argument that no evidence of an agency relationship between it and the third party who disrupted critical evidence in a case was "misplaced." No. 2:06-CV-54, 2006 WL 5157694, at *5 (N.D. Ga. Dec. 19, 2006). That case concerned liability for a fire that had occurred on the plaintiff's property allegedly resulting from the defendant's negligent installation of a gas firebox. Id. at *4. While the plaintiff's "fire cause and origin" expert was able to examine the firebox and conclude that the source of the fire was the box's improperly installed gas lines, a cleaning crew hired by plaintiff dismantled the firebox despite strict instructions to leave it untouched before defendant's expert could examine it. Id. at *1-2. When defendant brought its motion for spoliation sanctions, the plaintiff argued that the cleaning crew was not acting as its agent when it disobeyed instructions not to dismantle the firebox. In imposing sanctions on the plaintiff, the court held that "[e]ven if plaintiff itself did not destroy the evidence, plaintiff had access to and control over the evidence and failed to preserve it." Id. at *5.

Here, Plaintiffs' relationship to the destruction of the truck was *almost* entirely passive, creating a fair question of whether the truck's destruction can be attributed to them. However, there is evidence in the record suggesting that Glynn

AO 72A
(Rev. 8/82)

County held the truck for Plaintiffs' benefit, that Plaintiffs took advantage of this benefit, and that Plaintiffs failed to notify Defendants of the truck's impending destruction. There is also evidence that Plaintiffs had access to the vehicle and were explicitly given the opportunity to preserve it.

Glynn County wrote Plaintiffs' counsel to inform them that the County had approved disposal of the truck, but it would retain the truck to provide Plaintiffs "an opportunity to conduct an inspection." The fact that decedent, along with Plaintiffs Lucious Daniels Jr. and Mary Daniels, were all employees of Glynn County also suggests that the County retained the vehicle for Plaintiffs' benefit. While Glynn County's offer to retain the truck on Plaintiffs' behalf does not, by itself, create an agency relationship, Plaintiffs' decision to take advantage of that offer amounts to a subsequent ratification of the acts of another on their behalf. See Ga. Code Ann. § 10-6-1. Furthermore, Sloan testified that someone from Plaintiffs' counsel's office called him after he had already conducted the inspection and asked if "there was any need for [him] to see the truck again *or for them to hold onto it*," and he said no. Glynn County had repeatedly told Plaintiffs that it would destroy the truck *unless* Plaintiffs asked the County to retain it, and Sloan's deposition suggests that Plaintiffs well knew what would happen to the truck if they declined to inspect it a second time

10

or take appropriate measures to preserve it. Additionally, even though Plaintiffs failed to respond to the County initially, the fact that the County moved the disposal date from March 22 to March 29 suggests it was waiting for an affirmative answer from the Plaintiffs. Thus, Plaintiffs' interactions with and close relationship to Glynn County suggest that their decision not to preserve the truck was the final impetus of the truck's destruction. At the least, Plaintiffs could have conveyed the opportunity to preserve the truck to Defendants. As such, they can be held responsible.

### b. Determining Appropriate Sanctions

Having determined that Plaintiffs can be held responsible for Glynn County's destruction of the truck, the Court must now determine what sanctions are appropriate. If a court finds that a party has, in fact, spoliated evidence, the court may sanction that party's spoliation by dismissing the case, excluding expert testimony based on the unpreserved evidence, or issuing a jury instruction on spoliation of evidence which raises a presumption against the spoliator. See Flury, 427 F.3d at 945 (citing Chapman v. Auto Owners Ins. Co., 469 S.E.2d 783, 784 (Ga. Ct. App. 1996)).

Under Georgia law, destruction of critical evidence may warrant dismissal or exclusion of the evidence. Here, Defendants have asked first for dismissal of the case. Alternatively,

Defendants would like either exclusion of Sloan's expert testimony based on his inspection of the truck or, at minimum, the Court's finding of a rebuttable presumption at the summary judgment and trial stages that the evidence Plaintiffs failed to preserve was unfavorable to them.

In determining whether such severe sanctions are appropriate, the court must consider: "(1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded." Flury, 427 F.3d at 945; Bridgestone/Firestone, 574 S.E.2d at 926.

First, Defendant was prejudiced as a result of the truck's destruction, but not exceedingly so. The alleged cause of decedent's accident is the negligent design, construction, operation, and maintenance of a mechanical gate. Unlike many other vehicle tort cases, the evidence of the alleged breach in this case is entirely outside the vehicle, and Defendants need not inspect the vehicle to address Plaintiffs' allegations about the gate head-on. That said, Defendant is prejudiced insofar as it cannot mine the vehicle for any potential collateral defenses to the allegations. Furthermore, Plaintiffs' expert Sloan determined that this is not a case about the vehicle's

AO 72A
(Rev. 8/82)

mechanical defects, and Defendant will not be able to rebut this testimony at trial without the ability to inspect the vehicle itself. Even so, Defendant has not articulated how evidence of the destroyed truck is actually essential to its case, and any advantage it could have gained from inspecting the truck is mostly speculative. This initial factor, then, tilts in Defendant's favor, but only slightly.

The second factor in determining spoliation sanctions is whether the prejudice can be cured. Plaintiffs suggest that any potential prejudice Defendant has suffered is easily cured by simply giving Defendant access to the photos and report prepared by Sloan, its own expert. However, these photographs were taken from the Plaintiffs' perspective, and "[a]lthough the existence of photographs may mitigate the loss, they are no substitute for the actual evidence." Bridgestone/Firestone, 574 S.E.2d at 926 (finding that photographs of a vehicle do not cure prejudice caused by spoliation). Furthermore, giving Defendants access to the photographs will not be sufficient when the Defense must use the same photographs to rebut Plaintiffs' expert, whose authoritative imprimatur at trial could unfairly create bias in favor of his depiction of the photos. Plaintiffs have not proposed any other method to cure Defendant's disadvantage, so this second factor also weighs in Defendant's favor.

Third, the Court must consider the practical importance of the truck. Defendant argues that the windshield of the truck is of crucial importance, as it sheds light on the angle and point of impact at which the gate pierced the glass and entered the cab. Plaintiffs argue, though, that because Defendant did not seek to inspect the truck quickly enough, it obviously must not be very important to its defense. Plaintiff further argues that it is the gate that is the subject matter of the case, and not the truck. However, Plaintiffs' retention of an expert specifically to inspect the vehicle belies these arguments. Furthermore, Plaintiffs' own expert testified that it is important to make a physical inspection of a vehicle because "[i]t's helpful to be able to identify the extent—location [sic], extent, the magnitude of damage, [and] condition of the vehicle if that's an issue, those sorts of things." Sloan Dep. 13:21-14:9. And even if the truck, which is not the subject matter of the case, is not of the upmost importance, it is still of some practical importance because it is the instrument by which Mr. Daniels Sr. came into contact with the gate. Evidence need not touch on the focal point of litigation to be of practical importance; it is enough that the destruction of the evidence in this case places the parties on unequal footing.

Fourth, there is no evidence of bad faith on Plaintiffs' part. In Georgia, finding bad faith does not require a showing

AO 72A
(Rev. 8/82)

of malice. Flury, 427 F.3d at 946. Indeed, the Court sees absolutely no evidence in the record—circumstantial or direct—suggesting that Plaintiffs acted maliciously. However, courts are to "weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Id. In Flurry, the court held that culpability rested solely on the plaintiff where the plaintiff was the only party who knew of the spoliated vehicle's location and thus was the only party who could preserve it. Id. In fact, the defendant was in no position to preserve the vehicle because it was prohibited from even contacting the plaintiff to ask of the vehicle's whereabouts. Id. The court held that, under these circumstances and in light of the fact that prejudice to the defendant was "great," this fourth factor came out "squarely in favor of the defendant." Id.

Here, however, we have already determined that Defendant's prejudice is only moderate. Furthermore, Defendant was not prohibited from asking Plaintiffs where the car was, and there is nothing in the record to suggest that the Defendant was completely precluded from preserving the vehicle if it had acted with more diligence. Still, the Court must weigh this consideration against the fact that Plaintiffs were notified several times of the truck's impending destruction and were given multiple opportunities to preserve it. Furthermore, Plaintiffs plainly knew the value an inspection of the truck

AO 72A
(Rev. 8/82)

could have at trial and should have known that Defendant would want an equal opportunity to inspect it. While the Court cannot find that Plaintiffs were uniquely in a position to save the truck, they certainly were presented with several opportunities to do so, and those same opportunities did not arise as clearly for the Defendant. Plaintiffs' culpability, then, is rather slight, and the prejudice to Defendant is moderate. Thus, on balance, the bad faith factor tips slightly in favor of the Plaintiffs.

Finally, the fifth factor for the Court to consider is whether there is any potential for abuse if Plaintiffs' expert's testimony about the evidence is not excluded. Plaintiffs argue that there will not be any such abuse, because their own expert testified that the truck had no mechanical defects. But this unrebuttable conclusion is exactly the type of prejudice which spoliation sanctions seek to prevent.

On balance, these five factors as applied to this case warrant some sanctions, but obviously not to the full extent that Defendant requests. Outright dismissal would be improper in this case, where Plaintiffs' allegations of negligence are focused on the gate on Homer Wilson Parkway—which was preserved—and the benefits of Defendant's inspection of the truck are mostly speculative. However, there is a reasonable solution which cures any prejudice to Defendant and deprives Plaintiffs

16

of any unjust advantage they gained from inspecting the vehicle and then allowing it to be destroyed. That solution is to limit Sloan's role in this case (as it pertains to the truck) to that of photographer. See Bridgestone/Firestone, 574 S.E.2d at 927-28 (affirming trial court's sanction of excluding expert testimony but allowing photographs to remain); see also Dkt. no. 51, p. 12 n.4 (Defendant's reply brief, suggesting this possibility to the Court). This solution has the benefit of placing the parties on equal footing with regards to evidence presented at trial while not being unduly prejudicial to Plaintiffs, who have conceded that evidence about the truck is of little importance to their claims.

Sloan's photographs will be available to both parties at trial, but Sloan may not offer expert testimony drawn from his personal observations of the truck on March 18, 2013. He may, however, offer other appropriate testimony, including opinions based on the photographs themselves.

AO 72A
(Rev. 8/82)

## III. Conclusion

For reasons stated above, Defendants' motion to dismiss is **DENIED**; however, its motion for alternative sanctions is **GRANTED**.

**SO ORDERED**, this 22ND day of January, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)